Ducker, Judge:
Claimant, J. I. Hass Co., Inc., was awarded on July 20, 1964 by the State Road Commission, a contract in the amount of $294,-370.00, on a lump sum bid, for the cleaning and painting of the Interstate Bridge over the Kanawha River at or near Nitro, Putnam County, West Virginia, and providing an Engineer’s Field Office therefor, (Project 1- 64-1 (50) 43, Contract No. 3), the work under which contract was to be commenced within ten days after the date of the contract and was to be completed by November 30, 1964. A liquidated damages clause in the contract specified that the contractor was to be charged $100 per day for each day the contractor delayed the work after the date specified for completion of the work and as the work was not completed until 181 days had expired after the completion date, the Road Commission withheld $18,100 from the final estimate and payment. In addition to the liquidated damage amount, the final estimate shows there remained a balance of $5,008.05 remaining due the claimant.
Claimant now claims it is due the two items of $18,100.00 and $5,008.05, totaling $23,108.05, and extra caulking expenses of $2,837.44, and damages due to alleged defective specifications in the sum of $68,327.49, making the claim a grand total of $94,272.93. Inasmuch as our decision is to allow the $23,108.05 which will be hereafter discussed, we will proceed to consider the damages item of $68,327.49.
*210 The specifications for the work were set out in great detail, providing that the first coat or primer should be a vinyl type primer which should be applied by brush to a dry film thickness of 1.5 millimeters on the steel which was to be blast-cleaned to white or near white metal, the second coat to a 1.5 millimeters thickness, and the third coat to a 3.0 millimeters thickness. After the claimant had the difficulties which it now alleges, the Road Commission agreed to a change in the specifications to the effect that the thickness of the primer could be reduced to 1 millimeter, the second coat to be 2 millimeters, and the third to 3 millimeters. This modification was made after the claimant complained of difficulty in obtaining the 1.5 millimeter thickness on the vertical or sloping beams and upright parts of the bridge structure when it applied the paint by spraying it instead of brushing it on as provided for in the specifications. The paint which claimant received, and presumably ordered, was specifically designated for spray application and in so applying it it did not result in a 1.5 millimeter thickness. It appears that there was some delay in submission to the Road Commission by the claimant of the paint formulation before it was applied to the bridge, although the formulations were approved from time to time. The evidence is contradictory as to the sand-blasting before the application of the paint, the Road Commission claiming that the sand used was not according to specifications. There is also evidence questioning the quality of the labor used by the contractor, the Road Commission contending that properly qualified and/or more labor could have done the work within the time allotted for the completion of the job.
The claimant’s claim for damages on the basis of defective specifications has its inception in the fact that it attempted to use paint which, when applied by spraying, would not adhere to the vertical beams to provide the thickness required, and consequently it contends that it should not have been required to apply it by brush which would have necessitated more than one application to a coat. If that conclusion is justified, it seems to us that a contractor who claims sufficient knowledge and skill to undertake an almost three hundred thousand dollar painting job should have known that either the specifications were wrong when he bid on the project or that it would take brush applications to perform the contract. Furthermore, the *211 matter of the work in sandblasting was one which the claimant had to take into consideration in determining the amount of its bid on the project, as well as the amount of caulking or filling of cracks in the joints or separations in the steel structure.
The claimant has introduced evidence to the effect that the vinyl paint specified was not proper for the job, and this evidence was contradicted by the evidence of the Road Commission, the Commission contending that a coat of paint did not mean one application but, if necessary, it could mean more than one application to obtain the required thickness, under the specification that it was to be applied by brush until the Road Commission consented to the spray application and the reduction in the primer coat. The controversy, it appears to us, was of the claimant’s own making in obtaining paint that was only to be spray applied and time and labor saved, instead of brushing or spraying with more than one application to obtain a coat of specified thickness. The paint was used and was sufficiently applied to finish the work.
It is unfortunate that the claimant had to do more work than it had contemplated, but we cannot attribute that to the fault of, or the claimant’s interpretation of, the Road Commission’s specifications. It may not be amiss to consider the fact that bids for this work ran from the claimant’s low bid of approximately $294,000 to a high bid of approximately $393,000, and it is not unreasonable to conclude that some bidders must have properly interpreted the specifications and to have known that more work and labor would be necessary to apply the paint by brush. As experienced bridge painters, it seems also reasonable to conclude that the claimant should have known before bidding whether there were defects in the specifications and if there were defects it should not have bid or should have bid on a different basis for the work on the project. From all the facts we are constrained to conclude that the claim of $68,327.93 for damages for defective specifications should be disallowed.
The item of the claim alleging that the claimant is entitled to $2,837.44 for extra caulking expenses is not in our opinion sufficiently proven as work not included or contemplated in the contract bid, and we uphold the Road Commission in its refusal to honor the same.
*212 As to the item of $5,008.05 representing the balance of the contract price, and which does not appear from the record to have been paid, we cannot see justification for the withholding of payment of the same from the claimant, and we include such amount in the award herein made.
The Road Commission withheld as liquidated damages the payment of the sum of $18,100 for a delay of 181 days at $100 per day. While liquidated damage clauses are generally enforceable when substantial damages have resulted, it seems to us that inasmuch as traffic was not seriously interrupted or inconvenienced and no substantial pecuniary loss was suffered by the State or the public by the delay in the controversy over the paint quality and application, such controversy was an extenuating circumstance which we think made the enforcement of the liquidated damage clause rather harsh and unjustifiable. So we conclude that the claimant should not suffer such loss and we so hold.
Accordingly, we are of the opinion to and do award the claimant the items of $5,008.05, the balance due under the contract, and the $18,100 withheld as liquidated damages, making a total award for both said items of $23,108.05.
Award of $23,108.05.